### ROBERT DONOVAN v. OSMAN CHAPPELL.

*Forcible entry—Questions for jury.*

Complainant rented a store for two years, and on the same day entered into an arrangement with one Robinson to take a half interest in the mercantile business, to be carried on therein in complainant's *sole* name, who was to do all the handling, buying, and selling. Defendant seized the stock on a chattel mortgage, and took possession of the store, which complainant regained, and ordered the defendant to remove the goods. Shortly after this, complainant being sick at home, and the store in charge of an employé and open in the usual manner, defendant and two assistants came in, to one of whom he handed a new lock with directions to put it on the door, and who, on the employé's resisting, pulled off his coat, and told him not to interfere again; whereupon the employé went for assistance, and on his return found the door barricaded, and was unable to enter the store. A week afterwards complainant went to the store, and found it in the same condition, and was refused admittance by defendant's assistants. On the trial of a suit for forcible entry defendant sought to defend under alleged orders from Robinson not to remove the goods, but to take possession of the store and keep them therein. The circuit judge directed a verdict for the defendant on the theory that defendant's forcible entry was in behalf of Robinson, who was complainant's copartner, and complainant's eviction was in reality the act of Robinson.

*Held*, that there is little doubt of there being a *forcible* entry on taking possession by defendant, which fact was for the jury under proper instructions.

*Held*, further, that if Robinson had any right to the building at the time of defendant's entry, which is doubtful, it was for the jury to determine for *what* purpose and in whose right defendant took possession.

Error to Eaton. (Hooker, J.)   Argued November 9, 1886. Decided November 17, 1886.

Action of forcible entry.   Complainant brings error. Reversed.   The facts are stated in the opinion.

*Huggett & Smith*, for appellant:

The evidence of a forcible entry was sufficient for the consideration of the jury:   *Davis v. Ingersoll,* 2 Doug. 372; *Harrington v. Scott,* 1 Mich. 17; *Seitz v. Miles,* 16 Id. 456; *Shaw v. Hoffman,* 25 Id. 168, 169; *Willard v. Warren,* 17 Wend. 257.

If it is claimed that the store was held for the partnership, it must be on the theory of a trust estate, but such trusts are abolished by our statute:   How. Stat. § 5569, and notes; 1 Colly. Part. § 160.

*D. P. Sagendorph* and *Frank A. Dean,* for defendant:

Partnerships are founded in and must repose on mutual confidence and trust, and partners are general agents for each other in the business:   *Hutchinson v. Dubois,* 45 Mich. 143; *Chittenden v. Witbeck,* 50 Id. 401.

Robinson had the right, as a partner, for his own and the creditors' protection, to direct Chappell to take possession of the goods, having an entire as well as a joint interest therein, and being a trustee for the partnership:   *Hutchinson v. Dubois,* 45 Mich. 143.

The building, though leased by complainant in his own name, was for the use of the firm, the rent was paid by Robinson and charged to the firm,[1] and the store actually used

---

[1] Donovan testified that he paid the rent out of proceeds of his and Robinson's stock.

for partnership business; hence the case does not fall within the statute prohibiting resulting trusts:   *Thayer v. Lane,* Walk. Ch. 200; *Merritt v. Dickey,* 38 Mich. 41; *Way v. Stebbins,* 47 Id. 296.

MORSE, J.   This is an action of forcible entry, tried in the

Eaton circuit court on appeal from the judgment of a circuit court commissioner.

The circuit judge directed a verdict upon the theory that the forcible entry of the defendant was not for himself, but in behalf of one Robinson, who was a copartner of Donovan; that, if there was any eviction of complainant, it was in reality by Robinson, and not by Chappell.

We think the court erred.

There was not much dispute as to the facts. One Tilson rented the store in controversy to complainant for two years from and after April 7, 1884. On that day complainant and one Samuel Robinson formed a copartnership, and began a general furniture business in said store building, which was still in force at the date of the forcible entry claimed.

Previous to the twenty-fifth day of February, 1885, Chappell had taken possession of the goods in the store by virtue of a chattel mortgage. He also put a lock on the store, and undertook to hold possession of the building; but Donovan regained possession, took off Chappell's lock, and was in full control and possession of the building on that day. He ordered Chappell to remove the goods from the store.

Donovan was sick at home on the twenty-fifth of February, and one Charles Manry was in the store and holding it for him. Two men, Sterling and Lennon, who assisted Chappell, came into the store, and sat down about five minutes before Chappell appeared. The store was open in the usual manner that stores are open. When Chappell came in, he said: "Well, boys, how is business?" After some talk Chappell informed Manry that he had come to take possession of the building, and said he would leave Sterling and Lennon in charge. He then took a lock and screw-driver out of his pocket, and handed it to Lennon, and told him to put it on the door. Manry undertook to prevent this, and pushed Lennon away. Lennon handed the screw-driver to Chappell, and pulled off his coat, telling Manry he must not

meddle with him again. Manry then started out to get help; was gone only a few minutes; but, when he got back, Chappell and his associates were putting up a barricade to the door, and he could not get in. Manry was frightened by the manner and words of Lennon when he pulled off his coat, and for that reason left the store for aid. A week afterwards, when Donovan got well enough to be out, he went to the store, found it barricaded, and doors locked. Two men, Sterling and Lennon, were inside, and refused him admission, which he demanded of them.

There is not much doubt of there being a forcible entry upon and taking possession of these premises. At least, the fact of such entry should have been submitted to the jury to be determined by them under proper instructions from the court; and the question, if the forcible entry was found, as to who made such entry, should also have been submitted to them.

Under the complainant's testimony as to the character and extent of his copartnership agreement with Robinson, it is not clear that Robinson, at the time of the entry by Chappell and his associates, had any right whatever to the possession of the store, either jointly with Donovan or in any way. Donovan held the lease in his own name, and there was never any agreement that Robinson should have any interest in it.

Robinson was to have a half interest in the business, but Donovan was to do all the handling, buying, and selling of the goods in the store. Robinson's name did not appear in the business; he had no control of or anything to do with it at the store. Donovan swears:

"I was to have absolute control of the buying and selling. There was only just one proviso there; and that is, I should give him, or keep him posted on, the amount of my purchases. That I wouldn't purchase extravagantly was the only proviso there was in my having sole control of the store."

It is also an admitted fact that the goods belonging to the business had been taken into the possession of Chappell under a chattel mortgage, and there seems to have been no dispute as to his right to so take them. Donovan only insisted that he should move them out of his store, while Chappell for some reason was determined to sell them there.

Robinson was not sworn in the case, and therefore the complainant's version of the copartnership, and the rights of the copartners under it, was not disputed.

The circuit judge evidently based his instructions to the jury upon the evidence of Chappell as to the reason and effect of his entry. Chappell testified that he saw Robinson, and informed him that he had been ordered to take the goods out of the store by Donovan, and Robinson thereupon instructed him not to take them out. When Chappell went to the store, he says he told Manry that—

"I owned the goods, and had come down to take possession of that building for Mr. Robinson, so as to keep my goods in there, as I understood they were to be thrown out the next day by Mr. Donovan."

On cross-examination he testified:

"I got my authority from Mr. Robinson to take possession of that building the same day that I went there. The reason that I took possession was to hold my goods there. The goods were kept there after that."

Manry and one Ives, who were in the building when Chappell took possession, denied that he said anything about having authority from Robinson, or taking possession in his name.

If Robinson had any right to the possession of the building, which is doubtful, it was a question for the jury to determine for what purpose and in whose right Chappell assumed possession. His reason for doing so, by his own testimony, was to hold his goods there, and he did hold them there. It is difficult to perceive what interest Robinson could have had in

63 MICH.—4

the transaction; and, in view of the testimony of Manry and Ives that Chappell said nothing about Robinson at the store, but took possession in his own name, and his testimony given above, the jury would have been warranted, if they believed Manry and Ives, in finding the eviction, if any, to have been made by Chappell in his own name and for his own benefit.

The judgment of the court below is reversed, with costs, and a new trial granted.

The other Justices concurred.